IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAZMIN J.[1] o/b/o J.R., a minor child,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Civil Action No. 7:20cv00505 |
| ) | |
| KILOLO KIJAKAZI[2],   ) | |
| Acting Commissioner of Social Security,   ) | |
| ) | |
| Defendant.   ) | |

## REPORT AND RECOMMENDATION

Plaintiff Jazmin J., on behalf of J.R., a minor child, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding J.R. not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Jazmin alleges that J.R.'s impairments functionally equal a listing and that the Administrative Law Judge ("ALJ") erred (1) by finding that J.R. has a less than marked limitation in the domain of attending and completing tasks; and (2) in assessing J.R.'s symptoms and allegations. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 21), and **DENYING** Jazmin's Motion for Summary Judgment (Dkt. No. 19).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that J.R. was not disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Jazmin, on behalf of J.R., protectively filed for SSI in December 2016, claiming that J.R.'s disability began on August 17, 2014, due to allergies, asthma, hives, and bronchitis. R. 218, 247.[4] At the time Jazmin filed for SSI, J.R. was a school-age child, and at the time of the

---

[3] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

[4] The relevant period begins in December 2016, as SSI benefits are not payable for any period prior to the filing of an application. See 20 C.F.R. §§ 416.202, 416.501.

ALJ's decision, he was an adolescent. R. 16. The state agency denied Jazmin's application at the initial and reconsideration levels of administrative review. R. 72–82, 84–94. On May 8, 2019, ALJ Thomas Erwin held a hearing to consider Jazmin's disability claim on behalf of J.R. R. 38–71. Counsel represented J.R. at the hearing, which included testimony from both J.R. and Jazmin, who is J.R.'s mother.

The Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is not disabled. Id. § 416.924(a), (b). Next, the ALJ must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. Id. § 416.924(a), (c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function. Id. § 404.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to step three where the ALJ must consider whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. Id. § 416.924(a), (d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

On July 17, 2019, the ALJ entered his decision analyzing J.R.'s claim under the three-step process. R. 13–31. The ALJ found that J.R. was not engaged in substantial gainful activity and suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD"), conduct disorder, asthma, and allergies. R. 16. However, the ALJ concluded at step three that

3

J.R.'s severe impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

When conducting this step three analysis, the ALJ must consider the six relevant domains[5] of functioning to determine whether J.R.'s severe impairments functionally equal a listed condition: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In order for a claimant to be found disabled, marked limitations must be assessed in at least two domains or an extreme limitation assessed in one domain. Id. § 416.926a(a). "Marked" limitation is defined as "more than moderate" but "less than extreme." Id. § 416.926a(e)(2)(i) A minor has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. Id. Extreme limitation is defined as "more than marked." Id. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

Here, the ALJ, after considering the six functional "domains" concluded that J.R.'s impairments, either individually or in combination, were not functionally equivalent to a listed condition. R. 16. Specifically, the ALJ considered listing 112.11 (neurodevelopmental disorders), listing 112.08 (personality and impulse control disorders), and listing 103.03 (asthma). The ALJ concluded that J.R. had no limitations in the domains of acquiring and using information and moving about and manipulating objects, a less than marked limitation in the domains of attending and completing tasks, caring for himself, and health and physical well-being, and a

---

[5] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

marked limitation in the domain of interacting and relating with others. R. 13–31. Accordingly, the ALJ found that J.R. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. R. 31. Thus, the ALJ concluded that J.R. was not disabled. Jazmin appealed the ALJ's decision, and on June 25, 2020, the Appeals Council denied her request for review. R. 1–3. This appeal followed.

## ANALYSIS

Jazmin challenges the ALJ's finding that J.R.'s impairments do not functionally equal a listing, and specifically argues that the ALJ erred both by finding that J.R. has a less than marked limitation in the domain of attending and completing tasks and in assessing his symptoms and allegations.

### A. Medical History and Opinion Evidence

J.R. was nine years old on his alleged onset date and fourteen years old when the ALJ issued his decision. J.R. is in a regular classroom setting and earned mostly A's and B's in 2018 and 2019. R. 19, 22. He does not have an Individualized Education Plan. However, J.R. did have an Individualized Service Plan that began in October 2017 and was closed in March 2018. R. 464–65. The Individualized Service Plan included a QMHPC to provide intervention and individual and/or group counseling services during school addressing mental health, emotional, and behavioral issues. The closing summary indicates the reason for closing as "no longer interested in service." R. 465. J.R. also had a number of in-school suspensions, as well as an out of school suspension in January 2019 for classroom disruption and insubordination. R. 19.

J.R. had a well-check visit in June 2016 and was assessed with mild intermittent asthma. R. 369. Otherwise, no abnormal findings were noted. Id. In October 2016, he returned to his

family doctor with complaints of behavioral concerns and a request to be tested for ADHD. R. 365. At a follow-up visit in December 2016, after beginning ADHD medication, J.R.'s mother reported improving behavior problems. R. 362–63. At follow–up visits in 2017 and 2018, his mother again generally reported he was doing well in school, socially, and with his behavior problems. R. 359, 414, 421. One exception was a concern in July 2017 that J.R. was suffering depression as a side-effect of the ADHD medication and he stopped taking his medication for a few months and had increased behavior problems including a school suspension; however, by September 2017 he had begun seeing a counselor, restarted the ADHD medication and was "doing well since restarting med[ication]." R. 421–25. In January 2019, J.R.'s mother indicated that he was doing well in school and had no issues with behavior problems or socially, and asked that he be taken off the ADHD medication, stating that he doesn't take it on weekends or holidays and "seems to do well." R. 469. At his April 2019 follow-up, J.R. and his mother still had no concerns. R. 466. At the hearing in May 2019, J.R. indicated he was regularly taking his ADHD medication. R. 48–49.

    1. <u>Medical Opinions</u>

In March and June 2017, respectively, state agency doctors Joseph Duckwall, M.D. and Stephen Saxby, Ph.D., and Leslie Ellwood, M.D. and Howard Leizer, Ph.D., reviewed the record and found J.R. had no limitations in acquiring and using information, moving and manipulating objects, and health and physical well-being, and less than marked limitations in attending and completing tasks, interacting and relating with others, and caring for himself. R. 77–78, 89–90. The ALJ gave these opinions some weight. R. 22.

In March 2017, at age 11, J.R. had a consultative examination with Betty L. Gillespie, Ph.D. that included a mental status examination. R. 378–83. Dr. Gillespie noted that J.R. had not

taken his prescribed medication for ADHD prior to the exam because his mother wanted the clinician to see the severity of J.R.'s ADHD and oppositional defiant behaviors. R. 380. Dr. Gillespie noted "marked irritability during the assessment" and indicated a prognosis of "guardedly positive given [J.R.'s] grossly average intellectual capacity on estimate and his good response to medication to treat ADHD and oppositional defiant disorder." R. 382.

Bethany Lee, a family counselor, completed a Medical Source Statement in September 2017. She found none or only slight limitations in acquiring and using information, moving about and manipulating objects, caring for self, and health and physical well-being, and moderate or extreme limitations in attending and completing tasks, and slight or marked limitations in interacting and relating with others, but with no limitation in communicating or speech. R. 404. She indicated J.R.'s symptoms included hyperactivity, sadness, hopelessness, inattentiveness, and anger and that these symptoms would interfere with his ability to pay attention and concentrate more than 25% of a typical school day, but he would not miss school due to his conditions. R. 403. She indicated his overall prognosis as "stable." R. 403. The ALJ gave this opinion little weight, noting it was inconsistent with the record which showed symptom improvement with medication, as well as J.R.'s capacity to do chores, play team sports, and participate in a normal classroom. R. 22.

    2. Teacher Questionnaires

The record also contains multiple teacher questionnaires, all of which the ALJ specifically discussed and assigned some weight. Leslie Barrett, J.R.'s middle school history teacher, completed a Teacher Questionnaire in February 2017 and found no problems in attending and completing tasks. In fact, Ms. Barrett reported issues in only one domain, interacting and relating with others, including obvious and serious problems with expressing anger, following rules, and

7

respecting and obeying adults in authority. R. 266. Ms. Barrett wrote that she used a behavior contract to monitor behavior, and J.R.'s behavior improved. Id. Likewise, Cindy Deck, J.R.'s middle school algebra and geometry teacher, completed a Teacher Questionnaire in March 2019, finding no problems in attending in completing tasks, and reporting issues in solely the domain of interacting and relating with others. R. 309–16. Ms. Deck wrote that J.R. "is a very bright boy, but he has an anger problem and can be very rude to me and other students in the class." R. 316. Wanda Dalton, J.R.'s middle school science teacher completed a Teacher Questionnaire indicating no problems in attending and completing tasks, and writing, "[J.R.] usually completed and turned in assignments before they were due. He is very independent and intelligent." R. 327.

However, both J.R.'s Spanish teachers did note problems in the domain of attending and completing tasks. Ilsa Saavedra-Rogan, J.R.'s middle school Spanish teacher, completed a Teacher Questionnaire in March 2019, finding problems in attending and completing tasks, including very serious problems in waiting to take turns, changing activities, and working without distracting self and others.[6] R. 319. Ms. Saavedra-Rogan emphasized that J.R. was a "very intelligent student but very disruptive and undisciplined." R. 319. Marcianna Lane Rodriguez, Ph.D., J.R.'s middle school Spanish teacher, completed a Teacher Questionnaire in March 2019, likewise finding problems in attending and completing tasks, and writing that "J.R. needs a great deal of help to engage in class material and then complete tasks. He has a great deal of anxiety when it comes to new material. He is eager to get good grades but does not always sustain effort to get things done."[7] R. 335.

---

[6] Ms. Saavedra-Rogan also found problems in the domains of interacting and relating with others and caring for himself. R. 320, 322.

[7] Dr. Rodriquez also found problems in the domains of acquiring and using information, interacting and relating with others, and caring for himself. R. 24.

8

B. **Attending and Completing Tasks**

Jazmin argues that the ALJ's finding of a less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence and that the ALJ did not adequately explain his conclusions. In support, Jazmin cites to the Teacher Questionnaires from Dr. Rodriguez, Ms. Saavedra-Rogan, and Ms. Deck, which she argues "document J.R.'s significant difficulties in his ability to handle frustration, deal with his mood, cope, and handle the daily demands of school to attend and complete tasks." Pl.'s Br. at 20, Dkt. 20. Jazmin also contends that the ALJ's determination that J.R.'s behavior improved with his ADHD medication is not supported by substantial evidence.

In the domain of attending and completing tasks, the Commissioner considers how well the child is able to focus and maintain attention and how well he is able to begin, carry through and finish activities, including the pace at which the child performs activities and the ease with which he changes activities. See 20 C.F.R. § 416.962a(h). The SSA indicates that a school-age child (age 6 to 12) without impairment should be able to focus his attention in order to "follow directions, remember and organize [ ] school materials" and complete assignments. Id. § 416.926a(h)(2)(iv). The child should be able to "concentrate on details", "not make careless mistakes", "change your activities or routines without distracting yourself or others", "stay on task", and be able to participate in group sports and complete chores. Id.; SSR 09-4p. An adolescent (age 12 to 18) without impairment should be able to pay attention to increasingly longer presentations and discussion, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. Id. § 416.926a(h)(2)(v). The

9

adolescent should be able to organize his materials and time and should be able to maintain attention on a task for extended periods of time without being distracted or distracting peers. Id.

The ALJ provided detailed summaries of the teacher's opinions, as well as the other opinions in the record, and the medical evidence. The ALJ accurately noted that both Jazmin and J.R. reported improved symptom improvement with medication, and he was capable of participating in a normal classroom and playing team sports. R. 22. The ALJ acknowledged J.R.'s "noted difficulty concentrating during the consultative exam" and that he "exhibited poor focus and concentration," but also emphasized that he "typically made As and B's in normal classes." In explaining his decision that J.R. had a less than marked limitation in the domain of attending and completing tasks, the ALJ acknowledged that he had some difficulty with concentrating and focusing, but despite his ADHD diagnosis, J.R. received passing grades in school and generally performed well. The ALJ also emphasized that he reported a benefit from his ADHD medication, both at home and school, with both his mother and teachers noting improvement. R. 27.

The record supports this finding, including the consultative examiners assessment both of J.R.'s average intellectual capacity, and his "good response to medication to treat ADHD," as well as J.R.'s mothers' consistent reports to their family doctor of improving behavior problems and of doing well in school after beginning ADHD medication in 2016. R. 362, 359, 382, 414, 421, 466, 469. Specific to this domain, the ALJ weighed the opinions of five teachers, three who found no limitations in attending to and completing tasks, and two who did find limitations. Both J.R.'s Spanish teachers found he had problems with attending and completing tasks, and the ALJ gave their opinions some weight. In contrast, J.R.'s science, math, and history teachers, Ms. Dalton, Ms. Deck, and Ms. Barrett, all found no limitations in the domain of attending and

10

completing tasks, with his science teacher, Ms. Dalton writing that he usually completed and turned in assignments before the due date, and describing him as "independent and intelligent." R. 327. The ALJ also gave these teachers some weight, explaining that he found J.R. more limited because of difficulty concentrating and focusing, including "noted difficulty concentrating during the consultative exam." R. 22- 24.

Finally, the ALJ also gave some weight to the state agency doctors who found a less than marked limitation in this domain. R. 21–22. While Jazmin can certainly point to record evidence showing limitations in this domain, substantial evidence exists in the record to support the conclusion of the ALJ. Biestek, 139 S. Ct. at 1154. On balance, the record generally indicates that J.R. had a less than marked limitations in the domain of attending and completing tasks, and I conclude that the ALJ's determination is supported by substantial evidence.

Here, the ALJ properly followed the three-step sequential evaluation process and I find substantial evidence to support the ALJ's opinion that J.R. was not markedly limited in two or more domains or extremely limited in one domain of functioning. Generally, I will also emphasize that the standard in this case is substantial evidence, and in determining whether substantial evidence exists to support the Commissioner's decision, the court must consider the record as a whole. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Applying this standard means that, if substantial evidence supports the Commissioner, the fact that a claimant can point to records, or portions of records, that could also support a different conclusion, does not change the outcome. Indeed, the ALJ need not single out for discussion each piece of evidence in the record. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (noting, "there is no rigid requirement that the ALJ

11

specifically refer to every piece of evidence in [her] decision") (internal citation and quotation marks omitted).

### C. Subjective Allegations

Jazmin argues that the ALJ failed to explain how he evaluated the allegations, symptoms, and testimony in this case. In support, Jazmin cites to J.R.'s testimony from the hearing regarding difficulty concentrating and sitting still despite his medications, and that he continues to get in trouble at school. Jazmin also references her own testimony that J.R. has problems finishing assignments and homework, and often gets frustrated at school and cries. The Commissioner counters that the ALJ followed the regulatory symptom evaluation process, carefully considered the evidence, and substantial evidence supports the ALJ's conclusions.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[8] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[9] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[9] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

determine their functional consequences. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of J.R.'s medical and school history, including teacher evaluations and an Individualized Service Plan, along with J.R.'s and Jazmin's allegations, and the ALJ adequately supported his finding that the allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted J.R.'s testimony from the hearing, including that he suffered from asthma, ADHD, oppositional defiant disorder, and depression, as well as his reports of difficulty focusing, behavior problems, and suspensions in school, and a lack of friends. R. 19. The ALJ also noted Jazmin's testimony from the hearing regarding J.R.'s difficulty controlling himself and calming down. R. 19. The ALJ wrote:

> After considering the evidence of record, [I] find[] that [J.R.'s] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision.

R. 19. On an academic front, the ALJ explained that in 2018 and 2019, J.R. "typically maintained A's and B's in his coursework" and was in a regular curriculum classroom. R. 19, 20. Regarding behavior, the ALJ acknowledged that J.R. received an out of school suspension in January 2019, however, the ALJ also noted that J.R. was not taking his medication during this timeframe.[10] R. 21. The ALJ also referenced J.R.'s Individualized Service Plan which referenced

---

[10] At the hearing, after J.R. testified he had been over suspended five times, the ALJ attempted to clarify J.R.'s disciplinary record of suspensions, as follows:

behavior problems including being disruptive in class, but also indicated J.R. had "made excellent progress." R. 19. Likewise, though J.R. indicated he had "no friends" at the hearing, the ALJ noted he had reported during visits to his family doctor that he had a "best friend" and played basketball on a team. R. 21. At family doctor visits in 2016 through 2019, J.R. consistently reported being involved in team sports and having friends.[11] R. 363, 367, 385, 467, 469. When questioned about this discrepancy at the hearing, Jazmin stated that J.R. does have friends, he is "just mean to them" and will act selfishly when they come over to play at his home. R. 50.

Finally, the ALJ discussed Jazmin's function reports indicating limitations in communication, learning, physical abilities, behavior, cooperation, taking care of personal needs, paying attention, sight, and sticking with a task. R. 22. However, the ALJ gave these opinions little weight, explaining that J.R.'s mother "offered no specific limitations" and was likewise inconsistent with the record which contained generally normal well-child visits, and symptom improvement with medication. R. 22. Indeed, Jazmin stated at the hearing that after starting the ADHD medication, she did not have "a lot of complaints from school like [she] used to" though he does still often have to go to in school suspension for behavior. R. 54, 57.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). "If the

---

ALJ: It looked like [J.R.] had two suspensions, one was in 2017 for a fight.
Jazmin: Right.
ALJ: And one was just a couple months ago . . . So, really, we got the two. Is that your understanding?
Jazmin: Yeah, so far.

R. 49–50.

[11] At the hearing, Jazmin indicated that J.R. quit playing on a basketball team. R. 63.

claimant is a child who does not describe, or cannot adequately describe, his symptoms, the ALJ 'will accept as a statement of [the child's] symptom(s) the description given by the person who is most familiar with [the child], such as a parent, other relative, or guardian.'" Barnes ex rel. T.J. v. Colvin, No. 4:12-CV-254-D, 2014 U.S. Dist. LEXIS 3876 (E.D.N.C. Jan. 13, 2014) (unpublished) (quoting 20 C.F.R. § 416.928(a)). "The ALJ must make specific findings concerning the credibility of the [caregiver's] testimony, just as he would if the child were testifying." Id. (quoting Dew ex rel. K.W. v. Colvin, No. 4:12-cv-129, 2013 U.S. Dist. LEXIS 122536, at *21, 2013 WL 4523617, at *8 (E.D.N.C. Aug. 27, 2013) (unpublished)). The ALJ is not required to accept the caregiver's testimony about the child's symptoms at face value. Meadows v. Astrue, No. 5:11CV00063, 2012 U.S. Dist. LEXIS 115150, at *30, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 96-7p, 1996 SSR LEXIS 4) (noting that the ALJ must "weigh [a claimant's testimony about her symptoms] along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record.") Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After reviewing the entire record, I find that substantial evidence exists to support the ALJ's determinations regarding Jazmin's and J.R.'s subjective allegations.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the

15

Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

          Entered: October 27, 2021

          *Robert S. Ballou*

          Robert S. Ballou
          United States Magistrate Judge